UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-4-2015
```

ELIZABETH MANON,

                Plaintiff,

-v-

878 EDUCATION, LLC, ALFONSO GARCIA, AND ALEX OLINER,

                Defendants.

No. 13-cv-3476 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

    Plaintiff Elizabeth Manon ("Plaintiff") brings this action against 878 Education LLC, ("878"), 878's Director of Admissions Alfonso Garcia ("Garcia"), and 878's Vice President of Finance Alex Oliner ("Oliner"), alleging discrimination on the basis of her association with and caregiver status for a disabled individual, in violation of the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101 *et seq*) and the New York City Human Rights Law ("NYCHRL") (N.Y.C. Admin. Code § 8–107 *et seq*.). Now before the Court is Defendants' motion for summary judgment. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

I. BACKGROUND[1]

    Plaintiff – a mother with an infant child later diagnosed with Reactive Airway Disease (Pl. 56.1 Stmt. ¶ 68) – served as a receptionist in the admissions department at 878 from May through November 2012 (*id.* ¶¶ 1, 11, 83). As the sole Admission Office receptionist, Plaintiff sat at the

---

[1] The following facts, presented in the light most favorable to the Plaintiff, are drawn principally from Plaintiff's Counterstatement ("Pl. 56.1 Stmt.") (Doc. No. 49) to Defendants' Local Civil Rule 56.1 Statement ("Def. 56.1 Stmt.") (Doc. No. 42). In deciding Defendants' motion, the Court has considered Defendants' memorandum of law ("Def. Mem."), Plaintiff's opposition ("Opp'n"), Defendants' reply ("Def. Reply"), and the documents submitted in support thereof. (Doc. Nos. 40–43, 48–50, 51.)

front desk, answered phone calls, met with new students and ensured that their paperwork was in order, and served as the "first impression" of 878 to prospective students and parents. (*Id.* ¶¶ 12–13.)

Plaintiff's work schedule was Monday through Friday from 9:00 a.m. through 6:00 p.m., and she was required to punch in and out each day on a time clock. (*Id.* ¶¶ 15–16.) In the event that Plaintiff needed to arrive late to work or take time off, she was instructed to contact Garcia by phone or email. (*Id.* ¶ 17.) Plaintiff did, in fact, make several modifications to her regular schedule during her six-month employment at 878. In July, she took an approved vacation of nearly two weeks (*id.* ¶ 18), and the next month, she received approval to work from 8:00 a.m. to 5:00 p.m. two days each week to accommodate night classes (*id.* ¶¶ 19–22). During her tenure at 878, which spanned 132 work days, "Plaintiff left work early 54 times, arrived late 27 times and was absent 17 days." (*Id.* ¶ 27.) She also occasionally neglected to punch out at the end of her work day as required by 878. (*Id.* ¶ 43.) Nonetheless, between May and August, Plaintiff worked past her scheduled eight hours per day on more than 31 ocassions. (*Id.* at ¶ 26.)

During her employment, Garcia approached Plaintiff twice regarding her performance, once to reprimand her for arriving to work six minutes late and once to instruct her not to wear jogging attire to work. (*Id.* ¶¶ 29, 30, 36.) Additionally, Plaintiff concedes that she often forgot to require prospective students to sign in at the front desk, regularly took personal phone calls at her desk, and did not have a "smiley" disposition. (*Id.* ¶¶ 37–38, 44.) Though Plaintiff contends that her supervisors never spoke to her about this behavior, she admits that there was an office-wide meeting regarding appropriate interaction with potential students and parents in August or September of 2012. (*Id.* ¶¶ 39–41.) In September, Plaintiff sought a promotion to the admission staff but was unsuccessful. (*Id.* ¶¶ 47–48.)

2

During her tenure at 878, Plaintiff took several absences to care for her infant daughter. On October 10, 2012, Plaintiff accompanied her daughter to the emergency room and texted Garcia to inform him that she was unable to work because her daughter's oxygen was low at "only 60." (*Id.* ¶¶ 50–52.) Garcia responded that Plaintiff was "not to worry" about her absence from work. (*Id.* ¶ 53.) Two days later, Plaintiff emailed both Garcia and Oliner to inform them that she had been absent on the prior three days "[d]ue to [her] daughter's having pneumonia," which resulted in her being "hospitalized for 3 days." (*Id.* ¶ 57.) Plaintiff later told Garcia that, if her daughter had been an adult, she would have been diagnosed with asthma; as a child, however, her condition was referred to as Reactive Airway Disease. (*Id.* ¶ 67.) During the week of October 29, 2012, Plaintiff missed several additional days of work to care for her daughter. (*Id.* ¶ 69.)

On November 14, Plaintiff took further time off due to her daughter's illness and advised Garcia and Oliner that she "ha[d] been in the emergency room with [her] daughter all night[;] she is having difficulties breathing again." (*Id.* ¶¶ 59–60.) She was also absent the next day and communicated that her daughter required "asthma treatment every 4 hours" and was "still extremely ill." (*Id.* ¶ 62, 67.) When Plaintiff returned to work on November 16, Garcia terminated her employment with 878. (*Id.* ¶¶ 73–74.) The next month, Plaintiff's daughter's physician officially diagnosed Plaintiff's daughter as suffering from Reactive Airway Disease. (*Id.* ¶ 68.)

Plaintiff commenced this action on May 23, 2013, asserting claims for discrimination under Title VII, the ADA, and the NYCHRL. (Doc. No. 1.) On June 27, 2014, Defendants filed the instant motion (Doc. Nos. 40–43), which was fully submitted on August 1, 2014 (Doc. No. 51).

## II. Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine

dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]'– that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]," *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### III. DISCUSSION

#### A. ADA Claims

In order to establish a claim for "associational discrimination" under the ADA, Plaintiff must demonstrate that she was discriminated against by her employer because of her association with a disabled person. *See* 42 U.S.C. § 12112(b)(4). Absent direct evidence of discriminatory animus, courts in this Circuit apply the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973), to actions brought under the ADA. *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998).

1. Direct Evidence of Discrimination

Notwithstanding the parties' arguments regarding the *McDonnell Douglas* burden-shifting framework, "if a plaintiff is able to produce direct evidence of discrimination, [s]he may prevail without proving all the elements of a prima facie case." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (emphasis added); *see also Cartagena v. Ogden Servs. Corp.*, 995 F. Supp. 459, 462 (S.D.N.Y. 1998) ("Alternatively, a plaintiff may meet his or her burden, not by the *McDonnell Douglas* framework, but rather through direct evidence."). Direct evidence is distinct "from the kind of evidence which makes out a *McDonnell Douglas* prima facie case – i.e., evidence from which an inference of discrimination arises only because 'it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection,' and which inference is therefore immediately dispelled once the employer has produced evidence of a nondiscriminatory reason." *Cartagena*, 995 F.Supp. at 462 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The Second Circuit has noted that "direct evidence" would roughly equate to a "smoking gun" indicating that a plaintiff's firing was discriminatory. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1239 (2d Cir. 1995); *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir. 1992) (describing as an example of direct evidence "statements of a person involved in the decisionmaking process that reflect a discriminatory or retaliatory animus of the type complained of in the suit").

Here, Garcia told Plaintiff at the November 16, 2012 meeting – the day of her return to work following an absence to care for her daughter – that he was "letting her go" because he needed someone without children to work at the front desk. (Pl. 56.1 Stmt. ¶ 73.) When Plaintiff began crying and stated, "This is unfair. Please let me fix this. Give me an opportunity. What can I do to fix this?," Garcia responded, "I need someone who does not have kids who can be at the front desk at all times." (*Id.* ¶ 77.) He further asked, "How can you guarantee me that [] two

weeks from now your daughter is not going to be sick again? . . . So, what is it, your job or your daughter?" (*Id.* ¶ 82.) Garcia, Plaintiff's direct supervisor, made these remarks to Plaintiff during the formal meeting terminating her employment. *See Cartagena v. Ogden Serv. Corp.*, 995 F. Supp. 459, 463–64 (S.D.N.Y. 1998) (finding that direct evidence of discriminatory remarks made by a person who decided to terminate the plaintiff was sufficient evidence to withstand a summary judgment motion). Garcia's remarks could easily be viewed as a "smoking gun" admission that Garcia believed Plaintiff's daughter was disabled and would be frequently ill and, further, that Plaintiff's termination was directly motivated by Garcia's hostility towards Plaintiff's association with her daughter. At the very least, Plaintiff's assertions create a "thick cloud of smoke" sufficient to require 878 to "'convince the factfinder that, despite the smoke, there is no fire.'" *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1187 (2d Cir. 1992) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 266 (1989) (O'Connor, J., concurring)).

Of course, Plaintiff must allege sufficient facts for a jury to infer that Garcia knew that Plaintiff's daughter was disabled to render his comments actionable under the ADA. Prior text message communications support an inference that Garcia knew that Plaintiff's daughter's condition rose to the level of a disability. During Plaintiff's employment at 878, her daughter was hospitalized on several occasions for days at a time due to difficulty breathing, resulting in the child being "extremely ill." (Pl. 56.1 Stmt. ¶ 62.) Further, Plaintiff told Garcia directly that her daughter was wheezing and, if an adult, would be considered asthmatic, with a condition referred to as Reactive Airway Disease in children. (*Id.* ¶ 67.) She later informed Garcia via text message that she had to "keep her [daughter] on asthma treatment every 4 hours." (*Id.*) Under these circumstances, a reasonable factfinder could conclude that the child's progression of illness and Plaintiff's statement regarding Reactive Airway Disease provided Defendants with knowledge that Plaintiff's daughter was disabled, and not, as they claim, suffering from a number of temporary

6

and isolated medical ailments. *See Chen v. Citigroup Inv., Inc.*, No. 03-cv-6612 (GBD), 2004 WL 2848539 at *3 (S.D.N.Y. Dec. 9, 2004) (distinguishing between a disability and the "common cold").

### 2. "But for" vs. "Mixed Motives" Causation

Regardless of whether a plaintiff proceeds by direct or indirect evidence, she still must meet the ADA's statutory standard of causation. Defendants assert that under recent Supreme Court jurisprudence Plaintiff must establish that unlawful discrimination was the "but for" cause of her termination – something that, according to Defendants, she has failed to do. In *Gross v. FBL Financial Services Inc.*, the Supreme Court held that plaintiffs alleging violations of the Age Discrimination in Employment Act ("ADEA") must "prove by a preponderance of the evidence . . . that age was the 'but for' cause of the challenged employer's decision." 557 U.S. 167, 177–78 (2009). The Court noted that the ADEA's "because" language required "but for" causation in contrast to a "mixed motives" analysis. *Id.* at 175–75. Because the ADA's language closely tracks that of the ADEA statute, Defendants maintain that the Court should require Plaintiff to demonstrate that discrimination was the "but for" cause of her termination rather than a mere "motivating factor." (Def. Mem. at 11–12.) *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 336 (2d Cir. 2000) (noting the similar language in a pre-*Gross* opinion).

Although the Court agrees with other judges in this District who have concluded that the Supreme Court has cast doubt on the continuing viability of the "mixed motives" ADA case law, *see Mines v. City of New York/DHS*, No. 11-cv-7886 (JGK), 2013 WL 5904067, at *9 n.2 (S.D.N.Y. Nov. 4, 2013); *Widomski v. State of New York at Orange*, 933 F. Supp. 2d 534, 546 n.9 (S.D.N.Y. 2013), it need not resolve the issue on summary judgment since the evidence presented by Plaintiff, drawing all reasonable inferences in Plaintiff's favor, is sufficient to meet even the higher "but for" standard articulated in *Gross*.

As noted above, Plaintiff alleges that during her termination meeting her direct supervisor stated that he needed to hire someone without children to replace Plaintiff and asked, "How can you guarantee me that [] two weeks from now your daughter is not going to be sick again?" (Pl. 56.1 Stmt. ¶ 82.) Moreover, in contrast to Defendants' assertion that 878 terminated Plaintiff because "her job performance, attendance, attitude and behavior were consistently unsatisfactory" (Def. Mem. at 18), Plaintiff contends that no one in the office had ever documented or discussed any deficiencies in her performance – including failures to sign in students – and that Garcia even invited her to apply for a promotion. (Pl. 56.1 Stmt. ¶¶ 38, 46–48; Opp'n at 7.) Similarly, though there is no dispute that Plaintiff was late 27 times and left work early 54 times during her employment at 878, Plaintiff insists that she was only once reprimanded for late arrival and that her early departures were never discussed. (Pl. 56.1 Stmt. ¶¶ 23–24.) Indeed, she asserts that she was a dedicated and conscientious employee who frequently worked over eight hours to complete the tasks required of her position. (*Id.* ¶ 26.) Attire too, Plaintiff argues, was not a concern during her tenure at 878 and thus not a motivating factor in her dismissal. Garcia spoke to her only once regarding wearing "jogging pants," and she never wore such attire again. (Pl. 56.1 Stmt. ¶¶ 34–36; Opp'n at 7.) Finally, Plaintiff asserts that her supervisors never discussed any problems as to her general demeanor or reprimanded her for making personal phone calls at her desk. (*Id.* ¶¶ 37, 44–46.)

Plaintiff's arguments regarding her conduct during employment – combined with Garcia's statements while terminating Plaintiff one day following her return from an absence to care for her daughter – raise a triable issue of fact regarding whether 878 impermissibly fired Plaintiff. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (stating that twelve days between alleged sexual harassment and discharge could suggest a causal relationship). Simply put, regardless of whether the Plaintiff must show that her association with her disabled daughter was

the "but for" cause or a motivating factor in Defendants' decision to fire her, disputed issues of fact preclude resolution of this issue in a motion for summary judgment.

## B.  NYCHRL Claims

In addition to federal claims under the ADA, Plaintiff also requests that this Court exercise supplemental jurisdiction over her claims for gender and associational discrimination under the NYCHRL.

With respect to Plaintiff's gender discrimination claims, the Court finds that there is no evidence in the record to suggest that the behavior of 878 would have differed if Plaintiff had been a man and a father instead of a woman and a mother.  Indeed, Plaintiff conceded at a prior hearing that a gender claim under Title VII should be withdrawn from this action.  (Transcript of Proceedings dated May 16, 2014, Doc. No. 44 at 3:18–21.)  In the absence of evidence sufficient to create a triable issue of material fact, Plaintiff cannot survive summary judgment with respect to her claim for gender discrimination under the NYCHRL.

With respect to Plaintiff's claim of discrimination under NYCHRL based on her status as the caregiver for a disabled person, the law is clear that a plaintiff need only point to a medical impairment and establish that discrimination was a motivating factor in her termination in order to prevail under the statute.  *See* N.Y.C. Admin. Code §§ 8–102(16), 8–107(1)(a).  In this regard, the NYCHRL standard for associational disability discrimination is far less onerous than the "but for" standard under the ADA discussed above.  *Najjar v. Mirecki*, No. 11-cv-5138 (KBF), 2013 WL 3306777, at *8 (S.D.N.Y. July 2, 2013) (citing *Weiss v. JPMorgan Chase & Co.*, No. 06-cv-4402 (DLC), 2010 WL 114248, at *3–4 (S.D.N.Y. Jan. 13, 2010)).  Accordingly, for the reasons stated above, the Court finds that Plaintiff raises a triable issue of material fact under the NYCHRL and may proceed to trial on her associational discrimination claim.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's claim of gender discrimination under NYCHRL, but in all other respects DENIED. Trial on Plaintiff's claims for (1) associational disability discrimination under the ADA and (2) associational disability discrimination under the NYCHRL, will commence on May 25, 2015 at 9:30 a.m. in Courtroom 905 of the Thurgood Marshall United States District Court for the Southern District of New York, 40 Foley Square, New York, New York. The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry number 40.

SO ORDERED.

Dated:     March 4, 2015
           New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE