F5fdmanc

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  ELIZABETH MANON,

4                Plaintiff,               New York, N.Y.

5           v.                            13 Civ. 3476(RJS)

6  878 EDUCATION, LLC, ALFONSO
   GARCIA, Individually, and ALEX
7  OLINER, Individually,

8                Defendants.

9  ------------------------------x

10                                        May 15, 2015
                                          3:36 p.m.
11
   Before:
12
                   HON. RICHARD J. SULLIVAN,
13
                                          District Judge
14
                        APPEARANCES
15
   PHILLIPS & ASSOCIATES, PLLC
16      Attorneys for Plaintiff
   BY:  ALEX UMANSKY
17      CASIMIR WOLNOWSKI

18 SHER TREMONTE LLP
        Attorneys for Defendants
19 BY:  JUSTIN M. SHER
        JUSTIN J. GUNNELL
20

21         – also present –

22 Alex Oliner, Defendant

23

24

25

F5fdmanc

```
 1                (Case called)
 2                THE COURT:  Let's take appearances.
 3                For the plaintiff?
 4                MR. UMANSKY:  Good afternoon, your Honor.  Alex
 5     Umansky on behalf of the plaintiff.
 6                THE COURT:  OK.  Mr. Umansky, good afternoon.  And
 7     with you at counsel table?
 8                MR. UMANSKY:  Casey Wolnowski.
 9                THE COURT:  OK.  And I don't see Mr. Wolnowski on the
10     docket sheet.  Am I wrong about that?
11                MR. WOLNOWSKI:  No.  That is correct, your Honor.  I
12     will put in a notice of appearance this afternoon.
13                THE COURT:  OK.  All right.  Great.  Thank you.  Have
14     a seat.
15                And for the defendants?
16                MR. SHER:  Justin Sher, law firm of Sher Tremonte, on
17     behalf of the defendants, and with me at counsel table is
18     Justin Gunnell, my colleague, and defendant Alex Oliner.
19                THE COURT:  OK.
20                MR. SHER:  Good afternoon, your Honor.
21                THE COURT:  Good afternoon.  Have a seat.
22                The other individual defendant is Mr. Garcia.  He is
23     not here today?
24                MR. SHER:  Correct.
25                THE COURT:  He plans to be here for the trial?
```

F5fdmanc

1          MR. SHER:  Yes, your Honor.

2          THE COURT:  OK.  All right.  There are a number of

3     issues that were raised as motions in limine and some other

4     disputes that I think we have to resolve.  So I will just run

5     through them and resolve them.  If there is anything else that

6     I have missed, you will let me know.  If there are things that

7     you want to say to just made a record, I will certainly give

8     you a chance to do that.

9          We'll start with the plaintiff's motions in limine.

10    The plaintiff seeks to exclude testimony relating to her prior

11    criminal record, which includes a 2012 conviction for petit

12    larceny, a misdemeanor, and a 2011 arrest for petit larceny for

13    which there is no conviction.  I think the arrest is clearly

14    not going to come in.  The conviction I think really turns on

15    whether or not the conduct that underlies the conviction

16    involved falsity or deceit.  So I don't feel like I really know

17    enough to make a call on that.

18         So, Mr. Sher, since -- are you looking to introduce

19    this?

20         MR. SHER:  Yes, your Honor.

21         THE COURT:  Tell me, what is your understanding of the

22    facts that you would be introducing it?

23         MR. SHER:  Sure.  Ms. Manon was asked at the

24    deposition for all the details relating to her petit larceny

25    conviction and, unfortunately, she did not provide a response.

F5fdmanc

1    So our search of the criminal records database did not go into

2    any further details concerning the petit larceny conviction.

3    So to the extent the Court's ruling is depended on learning

4    more about the underlying facts of that conviction, what I

5    would propose is just a short interrogatory to the plaintiff

6    for additional information because it is in their possession,

7    and Ms. Manon didn't provide a response to the question at her

8    deposition.

9            THE COURT:  All right.  I guess one could say that the

10   remedy would have been to seek relief during discovery as to

11   somebody not complying or not responding to questions or

12   requests for further information through interrogatories.  You

13   asked the question at the deposition, and what happened after

14   that?

15           MR. SHER:  That was predecessor counsel so our

16   predecessor did not follow up but --

17           THE COURT:  All right.  I think, look --

18           MR. SHER:  We do think this information is in the

19   plaintiff's possession and --

20           THE COURT:  Well, presumably this is in her

21   possession, I agree with that, but I just don't like doing

22   discovery disputes on the eve of trial.

23           Mr. Umansky, what do you know about this conviction?

24           MR. UMANSKY:  Your Honor, my client does not have any

25   documents regarding this conviction.  The conviction was she

F5fdmanc

took some clothes from a store for her child because she didn't

have any money, was without a job, and they were paying for

medical bills.  So she took some clothes.  She was caught.

That's it.  There are no documents --

        THE COURT:  I mean, what are the circumstances under

which she tried to get them out of the store, do you know?

        MR. UMANSKY:  Putting it under a shirt or a jacket and

trying to walk out.

        THE COURT:  There is a Second Circuit case which

stands for the proposition that a larceny conviction should not

be admitted and should not be put before the jury where the

underlying conduct was shoplifting.  The Circuit found at least

in that case, in the circumstances of that case, the

shoplifting did not involve falsity or deceit.  I find it

amazing that you could say shoplifting did not involve falsity

or deceit.  Unless one announced that they were leaving the

store with the can of tuna fish or clothing that didn't belong

to them, it would seem to me trying to sneak it out is the

epitome of deceit.  But that is a case I would recommend to you

that.  That is United States v. Estrada.

        MR. UMANSKY:  I believe the Court called it stealth.

The Circuit --

        THE COURT:  I mean, I just don't see how it is not

deceit.  But that is the Circuit.  I have to follow the

Circuit.  So if it is what you describe, I think there is a

6

F5fdmanc

```
1    good chance it is not coming in under Circuit case law.  If I

2    were on the Circuit, I might have come out a different way, but

3    it is not for me to second guess the Second Circuit.

4           So, Mr. Sher, with that representation, and with that

5    authority, do you have any thoughts?

6           MR. SHER:  I do.  Along the lines of your Honor's

7    comments, I would argue for a good faith extension or a change

8    in the law and I would make that argument that the Second

9    Circuit should not apply it, but I am aware of the cases and

10   that --

11          THE COURT:  I don't think it is coming in.  I think

12   you have made your record.  But I also do think that since,

13   frankly, this should have been raised in discovery, it is sort

14   of waived at this point.  I just don't want to reopen it.  So I

15   am going to deny -- I am going to, I guess, grant the motion.

16   I am to going to exclude the testimony.

17          The next issue is the plaintiff's motion to exclude

18   her 2013 unemployment benefit records.  The argument by the

19   defendants is that these are relevant to the issue of damages.

20   I think that's really an open question in this Circuit.  I have

21   previously come out, you know, with the folks who were saying

22   that this really isn't relevant.  Azcour v. Little Rest Twelve

23   is my case in which I declined to deduct unemployment benefits

24   from the award of backpay, and so if that's the law that I'm

25   going to be applying or I'm not deducting, then I don't think
```

7

F5fdmanc

1    it is relevant.  So my inclination, then, is to grant that

2    motion as well.

3              I think now with respect to impeachment, it sounds

4    like defendants are seeking to impeach the plaintiff with

5    allegations that she made false statements in order to get

6    unemployment benefits.  That's a different story.  You can

7    impeach on that, or you can cross on that.  I think depending

8    on her answers, then the issue will be whether or not you get

9    to use extrinsic evidence to prove, or to disprove, what she

10   said on the stand.  I think that one we have to sort of take as

11   it comes.  But I don't think they're coming in otherwise with

12   respect to damages.

13             I think that you can cross on dishonesty, including

14   dishonest requests for unemployment benefits, and depending on

15   the answers, maybe that will open up an issue as to whether

16   they come in as extrinsic evidence that would be useful in

17   impeaching her.  OK?

18             (Pause)

19             All right?  OK.  The next motion, I guess for now we

20   go to the defendants' motions.  The defendant is seeking to

21   exclude a photograph of plaintiff's daughter in the hospital

22   that was sent along with a text message.  I've seen it.  I

23   don't think that it's inflammatory.  It is a kid in a hospital

24   bed with some sort of monitor on her.  I don't think the jury

25   will lose its mind over it.  I will give an instruction if I

F5fdmanc

1    need to, but I don't think that this is improper.  I think that

2    the email is relevant, and the photo is also relevant because

3    it at least could be probative as to when the defendants

4    learned about the daughter's disability.  So I'm going to deny

5    that motion.

6            And then we have the defendants' motion to exclude a

7    witness, Yonira Netera -- Y-o-n-i-r-a, Netera, N-e-t-e-r-a --

8    who plaintiff is apparently planning to call to testify about

9    the plaintiff's employment history and allegations of

10   discrimination.  This is a witness who is not listed among the

11   witnesses on the 26(a) initial disclosures, but it certainly

12   does seem that defendants were aware of her, right?  The

13   defendants are planning to rely on statements of Ms. Netera in

14   their case or not?

15           MR. SHER:  No, your Honor.

16           THE COURT:  No, you are not.  All right.

17           So what plaintiff has said is they only intend to use

18   Ms. Notera as an impeachment witness in the event defendants

19   put forth evidence purporting to establish prior out-of-court

20   statements by Ms. Netera.  So that sort of neutralizes the

21   issue.  You are not planning to do that, and so Mr. Umansky is

22   not going to seek to introduce her testimony; right,

23   Mr. Umansky?

24           MR. UMANSKY:  Yes, your Honor, unless defendant Garcia

25   testifies what he did do at his deposition --

9

F5fdmanc

```
 1              THE COURT:  Which is what?

 2              MR. UMANSKY:  Which is he testified that Ms. Netera

 3    told him why he didn't -- his claim why he didn't believe

 4    plaintiff's daughter was disabled or was sick, for that matter,

 5    because he claimed that Netera told him that plaintiff would

 6    use her daughter's illness as an execute to get out of work,

 7    meaning that she made this whole thing up --

 8              THE COURT:  Right.  The defendants aren't planning to

 9    use that statement, right?

10              MR. SHER:  That is correct, your Honor.

11              THE COURT:  So I think that one is resolved.

12              I think that is the motions in limine.  Am I missing

13    any?  We have some objections on exhibits, which I will talk

14    about in a motion.

15              MR. SHER:  Your Honor, this relates to the first

16    motion in limine relating to the photograph that is included in

17    the text message.

18              THE COURT:  Yes.

19              MR. SHER:  Since filing that motion, plaintiff emailed

20    us a blown up version of the photograph as well as additional

21    photographs that were not included in the text message and,

22    therefore, wouldn't relate to the defendants' knowledge of any

23    illness.

24              THE COURT:  I think what comes in is what -- the text

25    message I think comes in.
```

F5fdmanc

| 1 | MR. SHER:  Thank you, your Honor. |

2          THE COURT:  I mean, the text message never gets

3     converted to paper.  So it is never going to be bigger than

4     what is on the screen on one's phone, right?

5          MR. SHER:  Correct.

6          MR. UMANSKY:  Your Honor, we have the same exact photo

7     that is in the text message.  It is just a bigger version of it

8     because it is so small in the text message.

9          THE COURT:  But that's all the defendant would have

10    seen, right?

11         MR. UMANSKY:  Right.  When you open up the text

12    message through your phone, you would see a bigger version of

13    the photo rather than how it comes out --

14         THE COURT:  The most I will allow would be on a phone.

15    So that means, I don't know, it is not going to be anything

16    more than 4 inches probably.

17         MR. UMANSKY:  I have all the photos, if your Honor

18    would like to see them.

19         THE COURT:  I mean, you have blown them up to

20    8-and-a-half-by-11, right?  So I am not going to allow

21    8-and-a-half-by-11 because no defendant ever saw an

22    8-and-a-half-by-11 unless they printed it out.  Unless there is

23    some evidence that they printed it out, I am not going to let

24    it go to the jury that way.  I think it should be limited to

25    what the defendants saw in the form that the defendants saw it.

F5fdmanc

1          MR. UMANSKY:  Our position would be that it would be

2     the size of the screen of the phone.

3          THE COURT:  Yes.  I think that's fair.  That would

4     have been two views; one is on a text sort of alongside the

5     text message, a tiny little thumbprint, and then if you clicked

6     on that, then it would be probably 3 inches by 4 inches,

7     roughly, the size of the screen.  So I think that's fair.  OK.

8          Let's now talk about the exhibits.  Not too many

9     disputes.  The defendants object to the admission of the

10    Complaint.  I don't generally put the complaint in.  So the

11    jury doesn't get to see the complaint.  Usually the only way a

12    complaint would come in is if there are statements that the

13    defense wants to use to impeach as statements of a party

14    opponent.  I suppose plaintiffs could use the Complaint as a

15    prior consistent statement, but I don't see how on earth that

16    would be the case.  So I can't imagine that the Complaint is

17    coming in.  All right?

18         The defendants object also to the admission of

19    plaintiff's email to Mr. Oliner on November 21st on the basis

20    of relevance and hearsay.  So it seems to me that if the goal

21    is to use that email for the truth of what's in it, then I

22    think it is inadmissible hearsay.  I think this is the

23    post-termination statement of the plaintiff as to what happened

24    to her, and I don't see why that would be coming in unless it

25    is offered as a prior consistent statement or something like

F5fdmanc

1    that.

2            So what is the purpose for which you intend to offer

3    this, Mr. Umansky?

4            MR. UMANSKY:  Well, defendant Alex Oliner also

5    received this email.  He was copied --

6            THE COURT:  Right.

7            MR. UMANSKY:  -- on this email.

8            THE COURT:  But this is after the adverse action,

9    right?

10           MR. UMANSKY:  Yes.  This basically sums up her

11   feelings after the --

12           THE COURT:  Why are her feelings relevant?  He has

13   already acted.  So it doesn't go to his state of mind.  It

14   doesn't go to what he knew.  I just don't see why her

15   allegations as of November 21st are relevant.

16           MR. UMANSKY:  We would agree.

17           THE COURT:  All right.  So that is easy.

18           The plaintiffs object to time records and payroll

19   statements on the grounds of relevance, prejudice and hearsay.

20   I think that as long as the foundation can be established,

21   these would be business records, so I don't see a hearsay

22   problem.  It would seem to me they are relevant as to whether

23   or not there was a nondiscriminatory reason for the termination

24   if they reflect sort of absences and tardiness.  And I also

25   would think that payroll statements would be relevant to the

F5fdmanc

1    issue of damages.  So I certainly think these are probably

2    coming in as long as they can be authenticated as business

3    records.  So I think that objection is overruled.

4           And that's all I have.  Is there anything else I have

5    missed in terms of objections?

6           (Pause)

7           All right.  Then I sent you last night, pretty late,

8    the proposed voir dire.  So I don't know if you have had a

9    chance to look at them.  If you have any objections or --

10           MR. SHER:  If I may, your Honor, just before we move

11    on to the voir dire?

12           THE COURT:  Yep.

13           MR. SHER:  Just one.  We have not yet created it, but

14    now that the time records are likely to be admitted into

15    evidence, our intention is to create a demonstrative exhibit

16    based on that information.  I didn't want it to be a surprise

17    in the event that we did that.

18           THE COURT:  A demonstrative introduced as an exhibit

19    or just used in summation?

20           (Pause)

21           A summary chart or a demonstrative?

22           MR. SHER:  A summary chart, that is probably a more

23    precise description.

24           THE COURT:  All right.  The standard for a summary

25    chart under the federal rules of evidence is that if it is

F5fdmanc

1    helpful, likely to be helpful to the jury, and it's based on

2    evidence that's been introduced or properly put before the

3    jury, then it is permissible.  So I guess I'll need to see it,

4    but I think that they can be helpful.  And you are not going to

5    be relying on anything other than the payroll records for that?

6              MR. SHER:  Payroll and time records.

7              THE COURT:  So, yeah, I get sometimes a little

8    concerned when it is a summary chart that is based on some

9    documents and some testimony, because I think sometimes

10   snippets of testimony in a summary chart can sometimes be

11   misleading or can be really argument.  I am not opposed to it

12   in general.  The devil is in the details.  So let's see it as

13   soon as you've got it.

14             MR. SHER:  Thank you, your Honor.

15             THE COURT:  But I think they sometimes are valuable.

16             In terms of technology, what are you guys planning?

17   I've got a decked-out courtroom.  So monitors are in the jury

18   box and in the witness box and at the tables.  We have got an

19   Elmo over here, so if you want to put something on an overhead,

20   sort of, you can use the screens.  It is attached to the

21   lectern so just -- maybe you can't see it, Mr. Umansky, but

22   there is a slide-out drawer part of the lecturn that has an

23   overhead camera that allows you to zoom in and project

24   documents -- hard copy documents that you put on the Elmo.  So

25   you are certainly free to use those.

F5fdmanc

1              What are you thinking?

2              MR. SHER:  For defendants, I think our intention is to

3    use the Elmo.  To the extent we use technology, we are going to

4    use the court's technology.  I know that in other instances we

5    have had to meet with the court's tech people to set it up and

6    make sure it works and we can use it.  I don't know if the

7    Court knows how to use it.

8              THE COURT:  Well, the Elmo I can use.  But usually if

9    you are going to bring in a laptop, you will need to get a

10   laptop order from me, which I am happy to sign.  Then I think

11   it makes sense to connect with our tech person just so there is

12   no fumbling on the day we are trying to do it.

13             MR. SHER:  OK.  We will do that, your Honor.

14             THE COURT:  Mr. Umansky.

15             MR. UMANSKY:  Your Honor, we would agree with that.

16   And just to confirm that when we're showing the photographs,

17   that can also be used through the Elmo and it will be projected

18   to the jurors?

19             THE COURT:  Yes.

20             MR. UMANSKY:  Thank you.

21             THE COURT:  OK.  Anybody planning to use exhibits or

22   visuals in their openings?  I don't -- well, sometimes I allow

23   it.  I shouldn't say I have a hard-and-fast policy.  It is

24   unusual.  Most people don't try to use visuals, but sometimes a

25   PowerPoint that has a graphic or two is not necessarily

F5fdmanc

objectionable.  And in summations often people use PowerPoints that include exhibits that have been received in evidence or blowups of testimony from the transcript that are highlighted. That's all fine.

So I think you can probably talk to each other and make sure you have no objections to what the other side is trying to put in front of the jury, especially in openings since nothing is in evidence at that point.

OK.  How long a trial do you think this is going to be?  I think I told the jury four days, but it sounds to me like it is going to be less than that.  What do you think?

MR. UMANSKY:  It shouldn't take more than four days.

THE COURT:  So one of the things in the voir dire that I list is the witnesses and other names that will be mentioned at trial.  I think I asked you folks to supplement that. Because as of what you sent to me, the only people expected to testify are the plaintiff and the named defendants and then one other person, and now it sounds like that one other person may not be actually testifying.  Ms. Netera, she might be mentioned so I am happy to leave her name in.  But are there other names that that we should be including?

MR. UMANSKY:  Martin Oliner may be mentioned --

THE COURT:  I will have already introduced Mr. Oliner as a party, so I don't need to mention him there.

MR. UMANSKY:  His father.

F5fdmanc

| 1 | THE COURT:  I'm sorry, Martin Oliner.  OK. |

1          THE COURT:  I'm sorry, Martin Oliner.  OK.

2          Any locations or anything like that?

3          MR. UMANSKY:  Possibly the address of the school.

4          THE COURT:  OK.  What is that again?

5          MR. UMANSKY:  I don't have it in front of me.  I

6     believe Mr. Oliner would have that information.

7          THE COURT:  OK.  Are there any other changes in the

8     voir dire that anybody has got to propose?  I took out a couple

9     of proposed questions like anybody you know ever been

10    hospitalized overnight.  We'll be here forever.  There is

11    nobody on the planet who doesn't know such a person.  So I am

12    not going to ask questions that are likely to elicit raised

13    hands for every prospective juror.

14          Mr. Sher.

15          MR. SHER:  Yes, your Honor.  On the voir dire, I think

16    the Court got this from the defendants, but, with the Court's,

17    permission we want to modify it slightly on page 5, where the

18    court summarizes the defendants' positions.

19          THE COURT:  Oh, OK.

20          MR. SHER:  All I'm suggesting is that we reverse the

21    order so that where it says "defendants claim that they were

22    not aware that Ms. Manon's daughter was disabled at the time of

23    her termination," that it instead read "claim that she was

24    terminated for a legitimate nondiscriminatory reason and

25    because she was not qualified for a position," which is the

F5fdmanc

 1   line in the next sentence.

 2          THE COURT:  All right.  So "claim that plaintiff was

 3   terminated for a legitimate nondiscriminatory reason and

 4   because she was not qualified for her position," and any

 5   statement at all about the --

 6          MR. SHER:  Yes.  Then followed by -- it is a minor

 7   point, but then followed by, "In addition, defendants claim

 8   that they were not aware that Ms. Manon's daughter was disabled

 9   at the time of termination."

10          THE COURT:  OK.  I think that is fine.

11          MR. SHER:  Oh, yes.  And instead of "reason,"

12   singular, in that line, we would ask for "reasons," plural.

13          THE COURT:  OK.  All right.  I'm sure the jury is not

14   going to be hanging on every syllable but that is fine.  That

15   is accurate.  Anything else?

16          (Pause)

17          MR. SHER:  Yes, your Honor.  I believe there is one

18   more.

19          THE COURT:  Sure.

20          MR. SHER:  On page 7, paragraph 15.

21          THE COURT:  Yes.

22          MR. SHER:  We just suggest changing "asthma-like

23   allergic reactions" to "breathing problems" because I think her

24   other breathing-related --

25          THE COURT:  Respiratory problems?

F5fdmanc

1           MR. SHER:  Yes, that would be it.

2           THE COURT:  OK.  That is fair.

3           MR. SHER:  Your Honor, going back to your Honor's

4     original question about other names.

5           THE COURT:  Mm-hmm.

6           MR. SHER:  Mr. Garcia may testify about persons who

7     attended a meeting at which the plaintiff's attitude was

8     discussed, and the names of the people who attended that

9     meeting may come up in the testimony, I'm not sure, and that

10    two individuals in particular that he mentioned in deposition

11    testimony are Shakeem McKinnon and Rasean Wright.  And I will

12    spell that.  Shakeem is S-h-a-k-e-e-m.  McKinnon is

13    M-C-k-i-n-n-o-n.

14          THE COURT:  Yes.

15          MR. SHER:  And Rasean is R-a-s-e-a-n and Wright is

16    W-r-i-g-h-t.

17          THE COURT:  All right.  I will include those.

18          If anybody has any others, just email it to chambers.

19    We have a little bit of time left but the sooner the better.

20          MR. UMANSKY:  Your Honor, question 24 on page 8.

21          THE COURT:  Yes.

22          MR. UMANSKY:  "Have you or has any member of your

23    family or any close friend ever been the victim of a crime?  If

24    so, please explain."

25          THE COURT:  Right.

F5fdmanc

1          MR. UMANSKY:  We don't see the relevance of that for

2     the jury.

3          THE COURT:  I don't necessarily need to keep it in.  I

4     am happy to take it out.  I think it is generally designed to

5     elicit people who have had experiences with sort of the court

6     system, and sometimes people have very negative ones and we

7     want to ferret that out.  But I think in a case like this it

8     probably doesn't matter, so I am happy take it out if you are

9     OK with it.

10         MR. UMANSKY:  Thank you.

11         MR. SHER:  Your Honor, the defendants' preference is

12    if we can have more information about the jurors and their

13    experience with the court system, we would prefer to have that

14    in.

15         THE COURT:  Yes.  What is your concern?  You think it

16    is going to lead to bad results, or you just think it is not

17    particularly relevant?

18         MR. UMANSKY:  Well, it may confuse the jury, also.  If

19    defendants want to explore the jurors' experience with the

20    court system, maybe change it to experience with the court

21    system or --

22         THE COURT:  I have some questions about that.

23         MR. UMANSKY:  -- or formal lawsuits.  So I don't see

24    why a crime would necessarily -- or victim of a crime would

25    necessarily be valuable.

F5fdmanc

1          THE COURT:  I will think about it.  I will think about

2    it.  I think it is relevant in some civil cases, less relevant

3    in others.  I think it is probably less relevant in this one

4    than some 1983 case or a personal injury case, probably.

5          All right.  Anything else.

6          MR. SHER:  One more, your Honor.

7          THE COURT:  Yes.

8          MR. SHER:  I think there is a reference to Mr. Garcia

9    and Mr. Oliner as "leaders" of the company.

10         THE COURT:  Where is that?  What page?

11         MR. SHER:  Page 5.  I just don't know that -- it is

12   accurate that Mr. Garcia supervised and managed, but I don't

13   know that he was a leader of the company.  So I would suggest

14   former employer and its employees, 878 Education, Alfonso

15   Garcia and Alex Oliner.

16         THE COURT:  I think I could just say "agents," right?

17         MR. SHER:  That is fine, your Honor.

18         MR. UMANSKY:  Agents --

19         THE COURT:  Officers?

20         MR. SHER:  I don't think Mr. Garcia was an officer.

21         MR. UMANSKY:  He was a supervisor, but we stipulate

22   to --

23         THE COURT:  And how about if I said "supervisor"?

24   Were they both supervisors of her?

25         MR. SHER:  Mr. Garcia was Mr. Oliner's supervisor.  I

F5fdmanc

1    think "agents" is the best.

2                 THE COURT:  I think it is a legally accurate term.

3    "Leaders" is not a legal term at all.  So I think "agents" is

4    the way to go.

5                 All right.  Well, let me do this.  I think I had

6    better run for this other sentencing.  If there are other

7    changes or things that you think of, shoot us a short letter by

8    email.  The letter should be in PDF.  If it is just adding a

9    name, you can just send us an email cc'ing the other side, but

10   for anything more substantive do it by letter.  OK?

11                All right.  And then we'll start picking a jury -- I

12   have forgotten the date already.  What is the date?

13                MR. UMANSKY:  Tuesday, the 26th.

14                THE COURT:  OK.  So we'll -- you have my method of

15   picking, right?  I gave you how I pick the jury?  I will just

16   put 14 in the box.  I will ask them the questions.  The others

17   will have a questionnaire from which they can follow along.

18   And then depending on what they say, you will follow up with

19   them.

20                And if we have cause strikes, then I will remove them

21   and call new names from the back and that will go faster

22   because I will just ask them you have been following with the

23   questionnaire so what affirmative answers do you have, and then

24   we can move quickly through.

25                You each get three peremptory challenges, which will

F5fdmanc

1  leave us with a jury of eight.  They will all deliberate.  And

2  we'll do the challenges.  Plaintiff will do one.  The defense

3  will do one.  The plaintiff will do its second.  The defense

4  will do its second.  The plaintiffs will do its third.  The

5  defense will do its third, and we are done.  OK?  I think it

6  will probably take a few hours, but I think we should be ready

7  to open by lunch.

8         How long do you think your opening will be,

9  Mr. Umansky?

10         MR. UMANSKY:  No more than ten minutes.

11         THE COURT:  OK.  Great.

12         And how about you, Mr. Sher?

13         MR. SHER:  It should be around an hour, your Honor.

14         THE COURT:  OK.  Good.  Then we will call the first

15  witness.  And we sit from 9:30 to 5:30, so plan on that.  An

16  hour for lunch, typically.  And I will instruct the jury about

17  what they should do and not do.  So you have seen my

18  instructions.

19         MR. UMANSKY:  Your Honor, one question about

20  deposition if we use it for impeachment.  Does the jury use it

21  as a court exhibit?  Is the jury allowed to see the deposition

22  testimony?

23         THE COURT:  No.  I don't plan on it going into -- I

24  mean, to impeach?  You should impeach the way you would

25  normally impeach.  You confront the witness with a statement.

F5fdmanc

1  It has to be an inconsistent statement, obviously.  If it is a

2  party, then it then you are not limited to impeachment,

3  obviously, if it is a party statement.  And then give the

4  witness an opportunity to admit, deny, or explain.  So I don't

5  typically expect that we'll be introducing the transcript or

6  whatever the prior statement was in hard copy.

7       MR. UMANSKY:  If we're showing the witness his or her

8  deposition --

9       THE COURT:  You could put it on the screen or you

10  could just give a hard copy to the witness.

11       MR. UMANSKY:  OK.

12       THE COURT:  So mark it as an exhibit.  Call it

13  Plaintiff's 1 or Plaintiff's 6, whatever.  Give it to the

14  witness, but don't expect that the jury is going to be seeing

15  it and following along.  OK?

16       MR. UMANSKY:  Thank you.

17       THE COURT:  All right.  So with that, I am going to

18  kick you out of here.  And have a good weekend and I'll see you

19  on the 26th.

20       MR. SHER:  Thank you, your Honor.

21       THE COURT:  And then I will send you a final copy of

22  the voir dire probably next week.

23       MR. SHER:  Thank you, your Honor.

24       I think the Court asked for hard copies of the

25  exhibits.

F5fdmanc

1             THE COURT:  Yes.  Give those to my law clerk.

2             MR. UMANSKY:  Thank you, your Honor.  Have a good

3    weekend.

4             THE COURT:  You, too.  Thanks.

5             Mr. Wolnowski, you will file that notice, right?

6             MR. WOLNOWSKI:  As soon as I get back to the office,

7    your Honor.

8             THE COURT:  Very well.  Thank you.

9             If anybody needs a copy of the transcript from the

10   court reporter, you can take it up with the court reporter.

11            No foreign-language witnesses, right?  Everybody is

12   English speaking?  OK.

13            And talk with each other and with the court reporters

14   about what you are ordering, if you are ordering transcripts,

15   and in what form, because that will sometimes affect how we

16   send things back to the jury during deliberations.

17            Great.  OK.  Thank you.

18            MR. UMANSKY:  Thank you.

19

20                                          -   -   -

21

22

23

24

25